leaves the court. I'm Dean steward, on behalf of Mr. Phips. I'd like to talk for a moment about the lesser-included offense issue, our first issue. Frankly, I don't see why the government isn't conceding this issue. I recognize there's not a whole lot of authority comparing transportation and possession, but there's a great deal of authority comparing receipt and possession. And it's clear that possession is the lesser-included of receipt. The only difference, in my view, between transportation and receipt is receipt is clearly incoming. And transportation could be either outgoing or incoming. But possession has the identical elements to transportation, with the exception of the movement. Receipt and possession have the identical elements, except the movement incoming. Well, perhaps the government isn't conceding because each of the four counts were premised on separate conduct, and the case law says that's okay. Yes, Your Honor. But my suggestion is that you don't even have to go to the facts in the analysis as to whether or not it's a lesser-included, that you look at the statutes itself, the laws, rather than the facts behind them. And yesterday, I located U.S. v. Chorin. I decided not to do a 28J letter because it sounded a little bit late. But it's a Third Circuit case from 2003 that talks about, in this exact position, and I'll supply the exact site to the Court later, that you look only to the elements, that that's the key. And frankly, that makes sense to me as well. Once you've got your elements that are identical, with the exception of needing one extra element, that's the definition of lesser-included. That's what we all learned, if not in law school, shortly thereafter. Assume you're correct, if it were the same property, but if it's a different group of pictures? But we don't know that, Your Honor. What we have is the December transportation we'll concede for the moment that that's transportation, sending out of the video. And then a couple of months later, there's a search at his house, and they find 20-some-thousand images. There's no showing that that's not all part and parcel of the same images, that the video that was sent in December isn't part of the 23,000 or 21,000 images that were found months later. So the government was unable to distinguish that. Well, the transportation was of the one video, right? For this argument, yes. And the other counts, whether it included that one video or not, had many more pictures and came from separate thumb drives. So there was a distinguishing between each of the four counts. Well, I would disagree that they came from separate thumb drives. It may well be that the thumb drives that were the subject accounts two through four, the images there, one of them was the one that was sent previously in December. But again, there's no proof one way or the other. And our position would be it's all one course of conduct. It really doesn't matter anyway, again, because you come back to the fact that the elements are exactly identical with the addition of the movement aspect of it. And I think that the district court in the Kennedy case, that must have been what the judge thought. And I realize that this court did not grab that issue and do anything with it, appropriately so, because it wasn't teed up correctly. This case, in terms of the facts, it is teed up. And we would suggest that it's absolutely the lesser included. And here, what should have happened is pretrial, those three counts should have been dismissed. Once Judge Selna decided not to, at a minimum, they should have been dismissed at the time of sentencing. And I moved again after the conviction to dismiss those three counts. And he denied that. Counts 2 through 4. Correct. He denied that as well at the time of sentencing. And that's ECR 89 and 90 where we had that discussion. So my suggestion is, is those three counts, the possession counts, 2, 3, and 4, should be overturned at this point. And my client returned for resentencing. Resentencing is important, if for no other reason, that the guidelines may well be significantly affected. Now, Judge Selna may reimpose the same sentence. I don't know. I don't know how to divine what he may do. But as we know, he has to at least consider the guidelines. And if they're significantly lower, three levels lower, that may well affect what he ends up with in terms of a sentence. On my... This other case that you said you didn't give us, but a Third Circuit case, did it say lesser included offense of transportation? No, Your Honor. I believe that one was a receipt and a possession case. But what it did say is you don't look at the facts. You analyze the statute itself and the elements rather than the facts behind it. And again, I'll provide that to the Court. We have two constitutional issues, our issue number 2 and our issue number 4. These In essence, he disagrees with the Osborne decision from the Supreme Court in our second issue and went on at some length during his colloquy with Judge Selna at sentencing about his reasons for that. He asked that we preserve that issue. And so we presented both of them. The difference is the first one is he believes that Osborne was wrongly decided because he has a right under the First Amendment to view these images. Not much we can do about that. Understood, Your Honor. But maybe you'll get to go to D.C. We'll certainly see, Your Honor. And the other one, the distinction is it's a little hazier and I concede what the government said about it. The essence of it boiled down is that the sentence of 20 years denies him due process for merely viewing. And that's as succinct as I can make that. I want to go for a moment to the third issue, which is the admission of the offensive stories. This is a case where these stories were admitted in the government's case in chief. The government had a confession from my client, a full and complete confession. These stories were absolutely unnecessary. In their brief, the government said, well, we had to show that he was aware that the images he possessed were in fact child pornography. But he'd already admitted that. They had the confession. They knew they were going to put on the agents to say that. This is, as prior counsel might have indicated, the cherry on the top, but it wasn't necessary. They didn't need it. And what it did is it gave them ability in closing argument to argue, jury, convict this guy not on the evidence but because he's a really bad person. Could they argue that? Not in exactly those words, no. So really what we have are some stories that were written, only a few of many, wasn't really commented on during the trial testimony, was submitted for the jury to view if they wished. Of course, we don't know whether they read them or not. Right. If it was error, what difference did it make? By your own admission, he had a lot of other evidence to convict him. No doubt about that, Your Honor. But the jury should have been focused on the images, what he was actually charged with, not something that, A, isn't illegal as far as we can tell. And the jury was told that in the limiting instruction that it's not illegal. They were indeed. But the stories themselves, if you look at them, are so inflammatory and many people would say disgusting that it's like people were disgusting in the images themselves, the many thousands that he had. I would put them on a par. I would put them on a par. And I guess the bottom line question, perhaps a government counsel can answer this, is why did they really need them? Why even tactically, why take a chance under these circumstances? That's not a basis for reversal, otherwise we'd be reversing a lot of cases. No, no. And I understand this, Your Honor. But of course, as you see, we have five different issues here. And so what I would say, this is a brick in the wall. And I understand the Court's comments. And I'll move on to my last issue. You know, we had that in the earlier case. Did the government really need the testimony of the background of the agents and et cetera? But in here, too, did they really need it? But as my colleague has said, that really doesn't take you somewhere unless that evidence was somehow resulted in undue prejudice to your client. Well, and of course the hurdle you really have to get over. Right. And I would argue that, although my best evidence for that would be some sort of a post-trial investigation finding that jurors had rampantly discussed the stories themselves, but sadly we don't have that. I think you can presume what was going on just by the type of stories that they were and the fact that there's already, you know, hundreds of admittedly horrible videos and photos. I would guess that most of the jurors, if not all, didn't really want to read those stories having seen the pictures. And my suggestion would be, as a juror, some of them at least looked at them to see what was there and perhaps turned away saying, we don't really need to look at that. But then why is it there? What they've got is a stack of stories that they can now say, this is a really bad guy. Rather than focusing on the child pornography aspects, the video, the images, that's really the charge here, not the stories. Well, I don't think that ever came out in the trial, Your Honor. I may have argued it in closing. But my last issue was transportation. And yesterday I took a look at some of the definitions in 18 U.S.C. 2252, and I was looking for a definition of transportation. And I did not find one. There was plenty of words about transportation can be, and then, for example, let's say, by computer. Are there any cases that talk about it? No, I'm not sure this has really occurred to anybody else, maybe other than me. Maybe there aren't any cases because the statute itself, as you acknowledged, defined transportation as, quote, including by computer, end quote. Isn't that end of story? Well, except that, it doesn't include the actual movement. And that's what I argued to the jury. Well, then what does including by computer mean? Well, I'm not sure. I'm not sure. If I ran the zoo, perhaps there would be a definition of transportation that would include that. But what I argued to the jury was that simply clicking a mouse is a transmission, but it's not transportation because there's no actual movement. Is there any evidence about where this mouse delivered these pictures to? Yes, Your Honor, Germany. Germany. My recollection of the record was that the agent testified that the video went to Germany. I thought about the interstate transportation part of it, but that's pretty clearly present. You're looking deathly for arguments. In any event, the physical movement is what I argued, and that was our defense to count one. After the court declined to dismiss counts two, three, and four, we didn't have a whole lot to argue in terms of defense. How do you get from the U.S. to Germany without some movement? It's the electronic age. It's just accomplished, and 2013, boom. If this was 1970, that would be a legitimate question, and nobody would know. But the physical movement didn't happen. And I would request with a question. Well, it had to happen because it was on the screen here, and then it was on a screen many miles and an ocean away. Well, and we say that, and yet I can't tell you where the movement is in that. I don't understand how the pixels go and all of that stuff. All I know is that FedEx didn't deliver it. U.S. Mail didn't deliver it. And with the Court's permission, I'd like to reserve that minute and 54. Thank you. May it please the Court. Nancy Spiegel for Plaintiff Appleby, United States. Regarding the first issue, I think the problem with counsel's argument is that we don't even get to the Blockburger test because that requires that the same act or transaction violates two statutes, and here we don't have the same act or transaction. As the Court pointed out a few minutes ago, these were four separate acts. One, the transportation of the video in count one, and the other three were possession counts, possession of child pornography on three different devices. And so they are separate crimes. The Stephanodakis case that we cited in our 28-J letter from the First Circuit is pretty much exactly our case, although there were four counts of transportation, one possession. The Court found that they were each discrete crimes and there was no double jeopardy violation. Also, from this Court, in the Overton case, where there were Internet images as well as actual photographs, that was a receipt and possession case. This Court found no double jeopardy violation because, again, they were separate transactions. And the Court even said as an alternative holding that the government could have charged the receipt, the images that were actually downloaded and the images that were possessed on the memory card as separate counts, and that wouldn't have been a double jeopardy violation either. Does the indictment in this case sufficiently identify the conduct with each count to preclude overlap and to preclude opposing counsel's argument? I believe it does, Your Honor. It does identify the separate devices and the separate conduct and the separate dates. Regarding counsel's First Amendment argument, counsel concedes that there is controlling Supreme Court law on this issue, so I'm going to move on to the issue regarding the 404B evidence of the stories. Here, the government... Do you need it? The question that he wanted us to ask you. I'm happy to answer it. The government did need it. What counsel prior to trial, yes, there was a confession as to the fact that these were images of child pornography, but the government still has an obligation to prove the mens rea, which is the knowledge that the defendant knew these were images not of child erotica, not of adult pornography, but of minors engaging in sexually explicit activity. And so the government had a right to introduce any evidence it had of defendant's knowledge. The question that was asked was did you really need that in view of the pictures. Could there have been any question? Well, because the government did not know what the defense actually would be, the defendant could have taken the stand and argued a mistake, that somehow he had mistakenly downloaded these images, believing them to be something else. And this evidence was relevant because it had a tendency to show that this was the type of material that the defendant was actually interested in. And the district court considered the issue and... The photographs, the pictures over there, did he just download those once or were there a whole series of times he downloaded them? The pictures or the stories? I'm sorry. No, the pictures. They were discrete images, yes. I mean, there were some that were duplicates. No, no, I mean, did he just download that at one time, on one occasion? No, there were a number of duplicates. So you would have had to argue that each one was a mistake? I'm just suggesting that as a possible defense. I'm not suggesting that it's a good defense. I'm just suggesting that it was a possibility of a defense. I'm just trying to get Judge Zahari's question clear for you. Did you really think that this was something you needed? I believe that we did. You would have had to think that a jury might believe that he kept making that mistake over and over, downloading the wrong pictures. Although maybe if he made that mistake over and over, he made the same mistake with the books. Well, that could be. But I think the question is, did the district court abuse its discretion? Harry didn't ask that question. He didn't say, did it abuse its discretion? He said, do you really think you needed that evidence? Well, I think the answer is yes. Well, that's not necessarily true. You know, not everything that's introduced by the government is needed or even desirable. I mean, I think we've said a number of times, you know, the government risks getting reversed most frequently on evidence that it clearly didn't need. You know, it's sort of known as being a little overzealous in a prosecution. None of this has anything to do with the outcome of this case. Judge Zahari was just asking a question. I had to. What would make a prosecutor bother to do that? I mean, any juror who's seeing all those pictures wouldn't know that it was child pornography. I haven't seen any, and even I know it. Well, all I can say is that I think the government felt that it did in its burden to prove the mens rea that it felt that it needed these few stories to show that. You didn't introduce all 30 stories. You introduced three stories. There were 30,000 stories, Your Honor. Yeah, and you, it looks like you referred to three stories. Is that right? That's correct. We referred to three stories that comprised approximately 20 pages. I think the district court struck a nice balance in that it just allowed the government to mention the stories and where they could be found and the title of the stories. The stories were not read into the record, and the court did give a very specific limiting instruction at the end of the case. The Curtin case from the circuit suggests that the district judge should read the stories before deciding under 404. Yes. Is there anything in the record that makes it clear that he actually read it? I know he read the briefing, and from my review of the record, the stories were attached to the briefing, but he never really identifies, does he or she, he, thank you, that he read them. He does not so say on the record, but I think the court is entitled to presume that the court does read the pleadings of the parties and all three stories in their entirety were attached to the government's motion. If we don't, our clerks do. Regarding defense counsel's last argument with the transportation of the image, as the court pointed out, the statute specifically prohibits knowingly transporting by any means, including by computer. Yes, it is an intangible object that is transported by computer, but here it wasn't just an email, it was a video attached to an email that was transported. The government's evidence was a screenshot of the defendant's email sent box, which showed that this video attachment was emailed to an address in Germany. And if the court has no further questions, the government will submit on its brief. Thank you. Thank you. And, Your Honor, I'll waive the buzzer. Thank you, counsel. Thank you both. The case is argued, will be submitted.
judges: Zouhary, Reinhardt, Murguia